IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

vs.

SHAQUANDIS THURMOND,

Defendant.

No. CR13-0080

REPORT AND RECOMMENDATION

## TABLE OF CONTENTS

I.   INTRODUCTION ............................................. 1

II.  PROCEDURAL HISTORY ...................................... 2

III. RELEVANT FACTS ........................................... 2

IV.  DISCUSSION ............................................... 4
     A.  Was the Search Warrant Supported by Probable Cause? ......... 5
         1.  Applicable Law ..................................... 5
         2.  Analysis ........................................... 6
     B.  Is the Leon Good-Faith Exception Applicable? .............. 11
         1.  Applicable Law ................................... 11
         2.  Analysis ......................................... 12

V.   RECOMMENDATION .......................................... 13

## I. INTRODUCTION

On the 22nd day of November 2013, this matter came on for hearing on the Motion to Suppress (docket number 18) filed by the Defendant on November 13, 2013. The Government was represented by Assistant United States Attorney Justin Lightfoot.

Defendant Shaquandis Thurmond appeared in person and was represented by his attorney, Max S. Wolson.

## II. PROCEDURAL HISTORY

On October 9, 2013, Defendant Shaquandis Thurmond was charged by Indictment with possession of an unregistered short-barrel shotgun. At the arraignment on October 15, Defendant entered a plea of not guilty and trial was set for December 16, 2013.

On November 13, 2013, Defendant timely filed the instant motion to suppress. The Government filed its resistance on November 18. Because of the pending motion, the trial was continued to January 27, 2014.

## III. RELEVANT FACTS

On February 20, 2013, a warrant was issued to search the Defendant's residence on Eighth Avenue in Cedar Rapids.[1] In an attachment to his application for search warrant, Cedar Rapids police officer Randy Jernigan included boilerplate language regarding drug traffickers, and then advised the judicial officer of the following:

- On February 6, 2013, Robert Bates reported to the chief of police that "a black male and black female are selling crack cocaine" from the Eighth Avenue residence. Bates described the residence and its yard.

- Bates also told authorities that the people who reside at the residence drive a "new car," and identified the license plate number. The plate came back registered to a 1994 GMC Vandura registered to Deborah Harris on Troy Street in Cedar Rapids.

- Cedar Rapids police records did not show any recent activity at the Eighth Avenue residence.

---

[1] The search warrant was authorized by a judicial officer with the Sixth Judicial District of Iowa, but his or her signature is illegible, and the issuing "Magistrate/Judge" is not otherwise identified. *See* Government's Exhibit 1.

- On February 18, 2013, Officer Jernigan went to the Eighth Avenue residence and collected 13 black trash bags next to the alley behind the residence.
- While collecting the trash, a black female exited the back door of the residence and apologized for the amount of trash she put out. Jernigan asked her if she was moving and she said no, just cleaning up the house.
- Jernigan took the trash bags to the police station and sorted through the bags. In one of the garbage bags, Jernigan found "2 suspected marijuana roaches with green plant material inside that looks and smells like marijuana, blunt material, blunt paper, 2 baggie knots, cigarillo wrappers, and a mail document from the state of Iowa Disabilities Determination Service Bureau dated 01-25-13 to Shaquandis Thurmond of [redacted] 8th Ave SW Cedar Rapids Iowa 52404."
- Jernigan explained that "blunt material" is the tobacco removed from the cigarillo cigars, which is commonly replaced with marijuana prior to smoking it. Jernigan field-tested a sample of the suspected marijuana in one of the marijuana roaches and found that it tested positive for THC.
- On the same day, Investigator Lacina attempted to contact Bates to verify the vehicle information, but Bates "would not return her calls."
- The next day, February 19, Jernigan saw a white van with the license plate previously provided by Bates parked at the back of the Eighth Avenue residence.
- On February 20 at approximately 8:20 a.m., Jernigan was conducting surveillance at the residence and observed a black female walking through the alley and enter the residence through the back door. A black male then exited the back door and then went back inside.

- On the same date, at approximately 8:40 a.m., the white van with the license plate previously identified arrived and a black male exited the van and entered the residence through the back door.
- "During surveillance [Jernigan] did not see any activity consistent with the sale of illegal drugs, however, it is clear due to the evidence collected with the garbage, drug use and possibly packaging of illegal drugs is occurring" at the residence.
- A check of police records revealed that Defendant was arrested on January 17, 2013 for possession of a controlled substance. His juvenile criminal history showed that on May 19, 2011, he was arrested for an assault and possession of a controlled substance, and was given probation in the juvenile court system.

The state judicial officer concluded that there was probable cause to believe that contraband could be found at the Eighth Avenue residence. Accordingly, the search warrant was issued on February 20, 2013 at 3:35 p.m. The search warrant was executed nine days later, on March 1.[2] Officers seized a sawed-off shotgun, marijuana and paraphernalia, and documents associated with Defendant. Defendant was then charged in the instant action with possession of an unregistered short-barrel shotgun.

## IV. DISCUSSION

In his motion to suppress, Defendant asserts that the search warrant was not supported by probable cause. Furthermore, Defendant argues that the *Leon* good-faith exception is inapplicable. Accordingly, Defendant asks that any items seized during the search, and any statements made by Defendant or his mother at that time, be suppressed.

---

[2] The search warrant was returned on March 1 and the evidence log is dated March 1. *See* Government's Exhibits 1 and 2. In their respective briefs, both parties refer to the warrant as having been executed on March 1.

4

### A. Was the Search Warrant Supported by Probable Cause?

#### 1. Applicable Law

The Fourth Amendment to the United States Constitution protects persons and their houses against unreasonable searches and seizures. A warrant is required to search a person's house, with certain exceptions not applicable here. *Kentucky v. King*, ___ U.S. ___, 131 S. Ct. 1849, 1856 (2011). Probable cause is required for a search warrant; "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. CONST. AMEND. IV. In making a probable cause determination, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Stated otherwise:

> If an affidavit in support of a Search Warrant "sets forth sufficient facts to lead a prudent person to believe that there is a 'fair probability that contraband or evidence of a crime will be found in a particular place,'" probable cause to issue the warrant has been established.

*United States v. Grant*, 490 F.3d 627, 631 (8th Cir. 2007) (quoting *United States v. Warford*, 439 F.3d 836, 841 (8th Cir. 2006)). Probable cause "is a fluid concept that focuses on 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *United States v. Colbert*, 605 F.3d 573, 577 (8th Cir. 2010) (quoting *Gates*, 462 U.S. at 231). As such, the Court examines the sufficiency of a search warrant affidavit using a "common sense" and not a "hypertechnical" approach. *Grant*, 490 F.3d at 632 (citing *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005)).

The totality of the circumstances is considered in determining whether probable cause was established to issue a search warrant. *Id.* at 631 (citation omitted). In this case, no oral testimony was presented when the search warrant was issued. When an issuing judge relies solely on the written application to issue a search warrant, "only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." *Solomon*, 432 F.3d at 827.

### 2. Analysis

The attention of law enforcement was drawn to the Eighth Avenue residence when the chief of police received a report from Robert Bates on February 6, claiming that "a black male and black female are selling crack cocaine" from the residence. Bates also told authorities that the people who resided at the residence drove a "new car," and identified the license plate number. Apparently, however, the plate was registered to a 19-year-old van. Officer Jernigan later observed a white van with that license plate arrive at the residence, but his affidavit is silent regarding whether it was the 1994 GMC Vandura associated with that license number.

In its resistance, the Government concedes that the tip received from Bates "did not supply the probable cause" in issuing the warrant.[3] Rather, the information received from Bates simply drew law enforcement's attention to the residence on Eighth Avenue. While inclusion of the information regarding Bates' tip provided context to Jernigan's subsequent actions, I do not believe it adds in any way to a finding of probable cause.

Instead, the Government argues that probable cause was established by items found in the trash at the Eighth Avenue residence, and Defendant's prior criminal record. Officer Jernigan collected 13 trash bags from the alley behind the residence on Eighth Avenue. Officer Jernigan's affidavit states that a black female exited the back door of the

---

[3] Government's Resistance (docket number 20-1) at 7.

residence and apologized for the number of trash bags, explaining that she was cleaning. Defendant does not dispute that the trash bags came from his residence, or that they were placed by the alley for trash pick-up. Defendant agrees that a valid "trash pull" does not implicate the Fourth Amendment. *California v. Greenwood*, 486 U.S. 35, 40 (1988). Defendant notes, however, that 12 of the trash bags did not contain any contraband, and the 13th trash bag contained only a modest amount of marijuana and paraphernalia.

In his brief, Defendant concedes that "[i]t is undeniable that Eighth Circuit precedent sets a low threshold for the level of evidence of drug use in a trash pull that will be sufficient to establish probable cause for a search warrant," citing *United States v. Briscoe*, 317 F.3d 906 (8th Cir. 2003), and *United States v. Allebach*, 526 F.3d 385 (8th Cir. 2008).[4] In *Briscoe*, a search of the defendant's garbage revealed 40 marijuana seeds and 25 marijuana stems, testing positive for THC. 317 F.3d at 907. Briscoe challenged the subsequent search warrant, citing *Franks v. Delaware*, 438 U.S. 154 (1978), and arguing that the application improperly included misleading information. The *Briscoe* Court assumed "for the sake of argument" that the challenged statements in the search warrant application were false or made in reckless disregard for the truth, but found that they were unnecessary to establish probable cause.

> We conclude that the application would have been sufficient without the challenged statements because the marijuana seeds and stems recovered from Briscoe's garbage were independently adequate to establish probable cause.

*Briscoe*, 317 F.3d at 907-08. The Court reviewed its prior cases where items reflecting drug usage, coupled with other information, established probable cause for the issuance of a warrant. The Court concluded that items found in a trash pull, standing alone, may be sufficient to establish probable cause.

---

[4] Defendant's Brief (docket number 18-1) at 3.

> In those cases, the drugs or drug paraphernalia in the garbage were sufficient *corroborating* evidence to establish probable cause. The question in this case is whether the marijuana seeds and stems in Briscoe's garbage were sufficient *stand-alone* evidence to establish probable cause. We hold that they were. . . . [N]ot only does the presence of discarded marijuana stems and seeds reasonably suggest that ongoing marijuana consumption or trafficking is occurring within the premises, but the simple possession of marijuana seeds is itself a crime under both federal and state law.

*Briscoe*, 317 F.3d at 908 (Italics in original).

The Court reached the same conclusion in *Allebach*. There, acting on citizen complaints of frequent short-term traffic at his residence, police officers picked up trash bags at Allebach's curb. Officers found "two plastic bags with white residue, two corners torn from plastic bags, Brillo pads, a film cannister with white residue, and documents bearing Allebach's name and address." 526 F.3d at 386. The white residue on the plastic bags tested positive for cocaine. Allebach moved to suppress the fruits of the search of his residence, arguing that the trash contents were insufficient to establish probable cause. The Court rejected Allebach's argument.

> We have little hesitancy in concluding a reasonable magistrate would conclude the materials in the trash — two plastic bags with cocaine residue, two corners torn from plastic bags, Brillo pads, a film cannister with white residue — were sufficient to establish probable cause that cocaine was being possessed and consumed in Allebach's residence.

*Allebach*, 526 F.3d at 387 (citing *Briscoe*, 317 F.3d at 908).

More recently, the Court reached the same conclusion in *United States v. Smith*, 581 F.3d 692 (8th Cir. 2009). There, a trash pull at the defendant's residence revealed "multiple sandwich baggies with the corners ripped off. Some baggies contained soapy residue, three field-tested positive for cocaine, and others contained marijuana residue and seeds that field-tested positive for marijuana." *Id.* at 694. The application also stated that

8

Smith had been previously convicted of possession of a large amount of cocaine. Following his conviction, Smith argued on appeal that the search warrant application failed to state probable cause. The Court rejected Smith's argument.

> [The officer's] affidavit recited that Smith had a prior drug conviction and that a recent search of the trash at his residence yielded evidence of illegal drug activity. We agree with the district court that this information alone established probable cause to issue a warrant to search Smith's residence for evidence of drug trafficking.

*Smith*, 581 F.3d at 694 (citing *Allebach*, 526 F.3d at 387; *Briscoe*, 317 F.3d at 908). *See also United States v. Timley*, 443 F.3d 615, 624 (8th Cir. 2006) (holding that probable cause was established by a trash pull revealing 11 baggies with marijuana residue on them and a "quantity of marijuana" in another trash bag).

Turning to the facts in the instant action, Officer Jernigan's affidavit advised the judicial officer that "2 suspected marijuana roaches with green plant material inside that looks and smells like marijuana, blunt material, blunt paper, 2 baggie knots, [and] cigarillo wrappers" were found in the garbage at the Eighth Avenue residence. Jernigan also advised the judicial officer that a sample of the suspected marijuana in one of the marijuana roaches field-tested positive for THC. Furthermore, the judicial officer was informed that Defendant (whose mail was found in the same trash bag as the contraband) had been arrested 34 days earlier for possession of a controlled substance. In addition, the judicial officer was told Defendant received probation as a juvenile following an arrest for assault and possession of a controlled substance.

I believe that the facts set forth in the search warrant application are sufficient to lead a prudent person to believe that there was a "fair probability" that contraband would be found in the residence. *Grant*, 490 F.3d at 631. In *Briscoe*, the Court concluded that marijuana seeds and stems *standing alone* were sufficient to establish probable cause to search the residence. *Briscoe*, 317 F.3d at 908. In *Allebach*, the Court had "little

hesitancy" in concluding that cocaine residue found in the trash supported probable cause to search the defendant's residence. *Allebach*, 526 F.3d at 387. Similarly, when considering the defendant's prior drug conviction and items found during the search of his trash, the *Smith* Court concluded that "this information alone" established probable cause to issue a warrant. *Smith*, 581 F.3d at 694.[5]

Defendant asks that the Court distinguish the holdings in *Briscoe* and *Allebach*, based on the quantity and quality of the contraband found in the trash. That is, Defendant argues that the stems and seeds found in *Briscoe* weigh more heavily on the scale of probable cause than the marijuana and paraphernalia found here. Similarly, Defendant asserts that while the plastic bags and film cannister with cocaine residue found in Allebach support probable cause, the marijuana and paraphernalia found here do not. I believe this type of line-drawing would be exceedingly difficult, and there is nothing in any of the Eighth Circuit opinions which suggests the Court should undertake the type of contraband-balancing suggested by Defendant. Furthermore, Defendant's argument ignores the fact that the search warrant application refers not simply to the controlled substances found in the trash, but also states Defendant was recently arrested for possession of a controlled substance and received probation for the same offense as a juvenile.

Defendant also reminds the Court that probable cause, or the lack thereof, is determined by a totality of the circumstances. I have not disregarded the fact that some of the information contained in the affidavit cuts against a finding of probable cause. For example, when Officer Jernigan surveilled the residence on February 19 and 20, he "did

---

[5] In its resistance, the Government cites *United States v. Timley*, 443 F.3d 615 (8th Cir. 2006), for the proposition that the Eighth Circuit "appears close to a blanket exception holding that trash pulls, standing alone, provide probable cause for the issuance of a search warrant in all cases." Government's Resistance (docket number 20-1) at 6. The Court's opinion is quoting from the defendant's brief, however, and it is not clear that the Court fully adopted that description of the status of the law. *Id.* at 624.

not see any activity consistent with the sale of illegal drugs." Furthermore, the amount of drugs and paraphernalia found in the trash was comparatively small. Possession of marijuana is illegal in Iowa under state and federal law, however, regardless of the amount. Accordingly, after considering the totality of the circumstances, I believe that the search warrant issued on February 20, 2013 was supported by probable cause.

### B. Is the Leon Good-Faith Exception Applicable?

As set forth above, I believe the search warrant issued on February 20, 2013 was supported by probable cause. That is, the warrant was valid and the search was lawful. Because there was no Fourth Amendment violation, I believe it is unnecessary to consider whether the *Leon* good-faith exception precludes suppression of the seized evidence.[6] Nonetheless, I will address the issue in case the district court disagrees with my analysis on probable cause.

### 1. Applicable Law

The Constitution does not expressly prohibit the introduction of evidence obtained in violation of the Fourth Amendment. *United States v. Leon*, 468 U.S. 897, 906 (1984). Rather, the exclusionary rule is "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." *Id.* (quoting *United States v. Calandra*, 414

---

[6] The issues of probable cause and the good-faith exception may be addressed by the district court in either order. That is, if the district court finds that probable cause existed for the issuance of the search warrant, then it need not address the *Leon* issue. On the other hand, if the district court concludes that the *Leon* good-faith exception is applicable, then it need not address the issue of whether the search warrant is supported by probable cause. *See, e.g., United States v. Pruett*, 501 F.3d 976, 979 (8th Cir. 2007) ("If the District Court was correct in concluding that the *Leon* good-faith exception to the exclusionary rule applies, it is unnecessary for us to engage in a probable-cause analysis."); *United States v. Ross*, 487 F.3d 1120, 1122 (8th Cir. 2007); *United States v. Puckett*, 466 F.3d 626, 629 (8th Cir. 2006).

U.S. 338, 348 (1974)). The Court noted in *Leon* that it "frequently questioned whether the exclusionary rule can have any deterrent effect when the offending officers acted in the objectively reasonable belief that their conduct did not violate the Fourth Amendment." *Id.* at 918. After reviewing the purposes of the exclusionary rule, the Court concluded that "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant" will not be suppressed. *Id.* at 922. An officer's reliance on a search warrant is not "objectively reasonable," however, if one of four circumstances is present:

> The Supreme Court has identified four circumstances in which an officer's reliance on a search warrant would be objectively unreasonable: (1) when the affidavit or testimony in support of the warrant included a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the judge "wholly abandoned his judicial role" in issuing the warrant; (3) when the affidavit in support of the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) when the warrant is "so facially deficient" that the executing officer could not reasonably presume the warrant to be valid.

*Grant*, 490 F.3d at 632-33 (citing *Leon*, 468 U.S. at 923).

### 2. Analysis

Anticipating the Government's good-faith argument, Defendant addressed the *Leon* issue in the brief filed in support of his motion to suppress. Defendant argues that the *Leon* exception to the exclusionary rule is not applicable because the officers' reliance on the search warrant here was not "objectively reasonable." Specifically, Defendant relies on the third circumstance precluding the application of the *Leon* exception, which provides that an officer's reliance on the search warrant is not objectively reasonable if the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Grant*, 490 F.3d at 632-33; *Leon*, 468 U.S. at 923 (emphasis

added). Defendant also claims the warrant was "facially deficient" — the fourth circumstance precluding the application of *Leon*.

In *United States v. Ross*, 487 F.3d 1120 (8th Cir. 2007), the Court found that "'entirely unreasonable' is not a phrase often used by the Supreme Court, and we find nothing in *Leon* or in the Court's subsequent opinions that would justify our dilution of the Court's particularly strong choice of words." *Id.* at 1122-23 (quoting *United States v. Carpenter*, 341 F.3d 666, 670 (8th Cir. 2003)). As set forth above, I believe the search warrant application and supporting attachments establish probable cause to search Defendant's residence. Even if the district court finds that probable cause was lacking, however, it was not "so lacking" that the officers' reliance on the search warrant was "entirely unreasonable." As previously discussed, the Eighth Circuit Court of Appeals has held repeatedly that contraband found in a person's trash, standing alone, will establish probable cause for the issuance of a search warrant. Here, officers found marijuana and paraphernalia in Defendant's trash, and Defendant had been twice previously arrested for possession of a controlled substance. While Defendant now asks the Court to make fine judgments regarding the relative weight of the facts on the scale of probable cause, it was not "entirely unreasonable" for the officers to rely on the magistrate's determination that probable cause had been established. *See United States v. Gibson*, 928 F.2d 250, 253 (8th Cir. 1991) ("Ordinarily, a police officer cannot be expected to question a judge's probable cause determination.").

## V. RECOMMENDATION

For the reasons set forth above, it is respectfully recommended that the district court **DENY** Defendant's Motion to Suppress (docket number 18).

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court. *The parties are reminded*

*that pursuant to Local Rule 72.1, "[a] party asserting such objections must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections." Accordingly, if the parties are going to object to this Report and Recommendation, they must promptly order a transcript of the hearing held on November 22, 2013.*

DATED this 27th day of November, 2013.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA